

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TROY BANISTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 CV 5759 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| CITY OF CHICAGO; CHICAGO | ) | |
| POLICE OFFICER CRAIG BURTON;. | ) | |
| and CHICAGO POLICE OFFICER | ) | |
| SERGEANT MARC MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Troy Banister, brings this Section 1983 action against the City of Chicago, Chicago Police Officer Craig Burton ("Burton") and Chicago Police Officer Sergeant Marc Moore ("Moore"). Before the Court is the motion of Burton and Moore to dismiss various counts of Plaintiff's Third Amended Complaint. (Docket No. 68.)[1] For the reasons stated below, the motion is granted in part and denied in part.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide

---

[1] The City of Chicago is not a party to the motion and has not otherwise moved to dismiss the Third Amended Complaint against it.

1

the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (7th Cir. 2008) (internal quotations omitted) (*Tamayo*).

However, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1959 (2007) (*Bell Atlantic*). Put differently, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S.Ct. at 1974. The amount of factual allegations required to state a plausible claim for relief depends on complexity of the legal theory alleged. *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff, all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in plaintiff's favor. *Tamaya*, 526 at 1081.

## BACKGROUND

The following facts, alleged in Plaintiff's Third Amended Complaint, are accepted as true for purposes of this motion. On January 13, 2006, Chicago Police Department Narcotics Team A.N.E.T., Team B-6, was conducting undercover controlled narcotics purchases in the area of 122nd Street and South Lafayette, Chicago, Illinois. Moore was the supervisor for the Narcotics Team A.N.E.T., Team B-6, and Burton was working in plain clothes as a buy officer.

As Burton was attempting to buy narcotics, Plaintiff approached Burton to purchase marijuana. Plaintiff entered Burton's vehicle; and shortly thereafter, Burton

2

told Plaintiff that he did not have any marijuana. Burton instead told Plaintiff he wanted to buy crack cocaine from Plaintiff.

Plaintiff told Burton that he did not have crack cocaine and tried to exit Burton's vehicle. Burton grabbed Plaintiff's arm and again asked him for crack cocaine. Plaintiff escaped Burton's grasp and exited the vehicle. As Plaintiff was about to walk away from the vehicle, Burton yelled, "police, drop the gun." Plaintiff turned around and raised his arms to show that he was not carrying a gun. Although Plaintiff was unarmed and presented no threat to any person, Burton proceeded to shoot Plaintiff multiple times with his service revolver. Burton filed an additional shot at Plaintiff, striking him in the left buttock, while Plaintiff lay face down on the ground.

Although Plaintiff was unarmed during the incident, Burton and/or one of the other police officers working with Burton planted a pistol on the scene, approximately 39.11 feet from where Plaintiff collapsed after being shot. Burton falsely claimed, as justification for his shooting Plaintiff, that Plaintiff robbed him of $20.00 at gunpoint and refused to drop his gun after Burton announced he was a police officer. Burton and Moore created false evidence to support these false allegations.

Criminal charges were subsequently brought against Plaintiff; he was charged with armed robbery and incarcerated. A jury ultimately acquitted Plaintiff of this charge on May 15, 2008. Plaintiff was incarcerated in the Cook County Department of Corrections from January 13, 2006 through May 15, 2008.

Arising from these facts, Plaintiff alleges constitutional claims of excessive force (Count I), false arrest/false imprisonment (Count II) and a violation of due process

3

(Count III) under 42 U.S.C. § 1983. He alleges the following supplemental state-law claims: false arrest/false imprisonment (Count IV); malicious prosecution (Count V); *respondeat superior* (Count VI); indemnification (Count VII); intentional infliction of emotional distress (Count VIII); assault and battery (Count IX); and conspiracy to maliciously prosecute (Count X).[2]

## ANALYSIS

### *Count III*

In Count III, Plaintiff alleges that Burton and Moore deprived him of his constitutional due process right to a fair trial by deliberately misleading and misdirecting the state criminal prosecution against him by withholding exculpatory evidence and fabricating evidence against him. He alleges this conduct by Burton and Moore resulted in wrongfully causing the criminal proceedings to be brought and prosecuted against him. Plaintiff contends Burton and Moore's conduct would likely have led to his conviction had he not been able to locate three witnesses to the incident who ultimately testified truthfully to the facts at trial. Plaintiff asserts: "[w]hen police officers openly fabricate and withhold exculpatory evidence, as they have done in this instance, they actively circumvent an individual's ability to a fair trial." (Pltf. Opp. at 10.) Plaintiff relies on *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) (*Newsome*). In *Newsome*, the Seventh Circuit recognized that police officers may be liable for violating a plaintiff's

---

[2]Plaintiff's initial complaint, naming the City and Burton as defendants, was filed on November 17, 2006. A motion by Plaintiff for voluntary dismissal without prejudice was granted on May 8, 2007. Plaintiff filed a motion to reinstate the case on May 5, 2008, which was granted on May 8, 2008. Plaintiff subsequently filed three amended complaints. Plaintiff's Third Amended Complaint, naming Moore for the first time as a defendant, was filed on September 17, 2008.

4

constitutional due process right to a fair trial when they deliberately withhold exculpatory evidence and thus prevent prosecutors from complying with their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) (*Brady*). *Newsome*, 256 F.3d at 751-53 (citing *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) (allowing Section 1983 claim to go forward against officers who allegedly fabricated evidence and concealed exculpatory evidence)). The Court noted that if the plaintiff could prove his allegations that police officers withheld exculpatory information from prosecutors, the officers would not be entitled to qualified immunity. *Newsome*, 256 F.3d at 753.

Plaintiff contends *Newsome* demonstrates that he has adequately alleged a violation of his constitutional due process right to a fair trial under *Brady*. Burton and Moore dispute this. First, Burton and Moore assert that Plaintiff's due process claim amounts to a claim for malicious prosecution, and the Seventh Circuit held in *Newsome* and *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003) (*McCann*), that a state claim for malicious prosecution cannot serve as the basis for a constitutional claim. (Rep. at 2.) Indeed, the Seventh Circuit ruled in *Newsome* that "the existence of a tort claim [of malicious prosecution] under state law knocks out any constitutional theory of malicious prosecution." *Newsome*, 256 F.3d at 751.[3] However, the Seventh Circuit *acknowledged* that allegations that police officers concealed exculpatory evidence from prosecutors can give rise "to a [constitutional] due process claim in the original sense of the phrase - [plaintiff] did not receive a fair trial if the prosecutors withheld material exculpatory details." *Newsome*, 245 F.3d at 751-52. This is what Plaintiff alleges in Count III, not a

---

[3] *See also McCann*, 337 F.3d at 786 (plaintiffs cannot "do an end run around [*Newsome*] by recasting claims for malicious prosecution and/or false arrest into constitutional principles.")

5

constitutional claim of "malicious prosecution." Therefore, the claim is not barred under *McCann*.

Second, Burton and Moore argue that Plaintiff has no cognizable *Brady* claim because "Plaintiff was present at the time of his arrest and therefore was aware of the alleged 'exculpatory evidence,' *i.e.*, that Plaintiff never possessed a gun, pointed a gun at Defendant Burton, and tossed the gun." (Rep. at 3.) *Brady* does not require the disclosure of evidence of which the plaintiff is already aware.

Burton and Moore cite *Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006) (*Sornberger*). The alleged *Brady* violation in *Sornberger* was that police officers failed to disclose to plaintiff and prosecutors that the officers had coerced plaintiff's interrogation. The court held there was no *Brady* violation because plaintiff "knew herself what occurred during [her] interrogation, and the police were under no *Brady* obligation to tell her again that they coerced her into confessing." *Sornberger*, 434 F.3d at 1029. The court further stated:

> Nor can *Brady* serve as the basis of a cause of action against the officers for failing to disclose these circumstances to the prosecutor. *Brady* rights run to the criminal defendant, not to the prosecution. The Constitution does not require that police testify *truthfully*; rather "the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies. [Plaintiff] was not deprived of evidence held by police or prosecutor that would have helped her question the officers' version of the events in court. She therefore has not stated a valid *Brady* claim.

*Id.* (citations omitted; emphasis in original.) Burton and Moore rely on *Sornberger* for the proposition that a police officer's false statements to a prosecutor are not sufficient to

6

support a *Brady* claim. *See also Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008) (*Carvajal*) ("A lying witness is certainly not a *Brady* violation. It is already established law that *Brady* does not extend so far as to provide relief in a situation where a police officer makes a false statement to a prosecutor.") (citation omitted.)

However, Plaintiff's allegations here are not simply that Burton and Moore lied to prosecutors and testified falsely; Plaintiff alleges that Burton and Moore withheld exculpatory evidence and created false evidence. The Third Amended Complaint does not state the details of what evidence was allegedly withheld and what evidence was allegedly fabricated. Nor does it state all of the details of the criminal proceeding. However, at this stage of the proceeding, where the Court is obligated to view Plaintiff's allegations in the light most favorable to Plaintiff, these allegations are sufficient to survive Burton and Moore's motion to dimiss Plaintiff's due process claim based on *Brady*. *See Sornberger*, 434 F.3d at 1028 ("Because the allegations involve active concealment and failure to disclose on the part of Officers Sheppard and Riley, we must treat [plaintiff's] due process claim as one predicated on [*Brady*]. Such a claim is viable when the prosecution or police fails to disclose exculpatory evidence to a criminal defendant before trial.").

Burton and Moore's final argument is that there can be no *Brady* violation arising from Burton and Moore's conduct because Plaintiff was ultimately acquitted at trial. The Seventh Circuit has issued dicta in two recent opinions supporting this position. *See Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008); *Bielanski v. County of Kane*, Case No. 07-1928, 2008 WL 52458997, **11-12 (7th Cir. Dec. 18, 2008) (*Bielanski*).

The Seventh Circuit stated in *Bielanski*:

> Several of our sister circuits to consider the question have concluded that a *Brady* claim is extinguished when a defendant is acquitted or charges are dropped.
>
> We very recently expressed doubt in *Carvajal* that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation. We noted that the Supreme Court measured *Brady* materiality by whether the nondisclosure was so serious that the suppressed evidence would have produced a different verdict. We took this to mean that, although a prosecutor must decide whether evidence is *Brady* material prospectively, **a true constitutional violation is measured with the outcome in mind.**

*Bielanski*, 2008 WL 52458997, *11 (citations omitted) (emphasis in original). *See also Carvajal*, 542 F.3d at 570 ("[W]e are doubtful . . . that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation.").

Although the Seventh Circuit expressed doubt whether an acquitted defendant could establish a *Brady* violation, the Seventh Circuit did not decide the issue. Instead, it determined, in both *Bielanski* and *Carvajal*, that the alleged *Brady* claims were insufficient because it was not shown that disclosure of the allegedly undisclosed evidence would have resulted in earlier dismissal of the charges brought against the plaintiffs. *See Carvajal*, 542 F.3d at 569 ("We cannot reasonably see how [the evidence] would have caused the prosecutor's entire case to unravel or the suppression judge to alter his ruling"); *Bielanski*, 2008 WL 52458997, at *12 ("The evidence weakened parts of the prosecutor's case but was not the type of evidence that would have precluded the charges entirely.").

The Third Amended Complaint, read in the light most favorable to Plaintiff at this stage, is sufficient to at least plausibly suggest that the criminal case against Plaintiff

8

might not have been pursued (or at least would have unraveled sooner) had exculpatory evidence withheld by Burton and Moore been revealed. Therefore, Burton and Moore's motion to dismiss Count III is denied.

## Count X

Burton and Moore next move to dismiss Plaintiff's state-law conspiracy claim. Plaintiff alleges that Burton and Moore agreed, conspired and acted in concert to falsely and maliciously initiate a criminal prosecution against Plaintiff for crimes he did not commit (armed robbery and unlawful use of a weapon by a felon) and committed the following acts pursuant to such conspiracy: fabricating evidence; suppressing exculpatory evidence; misleading prosecutors and perjuring themselves with the improper purpose of procuring the criminal prosecution.

Burton and Moore contend this count should be dismissed on the basis of the "Intracorporate Conspiracy Doctrine." In *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), the Seventh Circuit recognized the intracorporate conspiracy doctrine and held that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). The Seventh Circuit has not extended the doctrine to conspiracy claims under § 1983. Many courts in this district that have addressed the applicability of the intracorporate conspiracy doctrine in the context of allegations similar to those

9

alleged here have held that the intracorporate conspiracy doctrine does not apply. (*See* cases cited in Pltf.'s Opp., at 13, n. 5.) As the district court reasoned in *Newsome v. James*, No. 96-7680, 2000 WL 528475, \*\*14-16 (N.D. Ill. Apr. 26, 2000) (*James*):

> The intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy for routine, collaborative business decisions that are later alleged to be discriminatory. The conduct plaintiff alleges here does not fit that mold. The decision to frame plaintiff for . . . murder, as plaintiff alleges it, is not the product of routine police department decision-making.

2000 WL 528475, at \*15.

This reasoning is persuasive. For the same reasons stated in *James*, this Court likewise declines to extend the intracorporate conspiracy doctrine to Plaintiff's Section 1983 claims. Burton and Moore's motion to dismiss Count X is denied.

### *Counts II and IV*

Finally, Burton and Moore contend Plaintiff's claims of false arrest and false imprisonment should be dismissed as against Moore on the basis of the statute of limitations.

The parties do not dispute that a two-year statute of limitations applies to Plaintiff's false arrest/imprisonment claim under the Constitution (Count II), and a one-year statute applies to the state-law count (Count IV).

Burton and Moore assert that Plaintiff's claims accrued on January 13, 2006, when Plaintiff was arrested. They assert the claims against Moore are barred because the Third Amended Complaint naming Moore as a defendant was not filed until September 17, 2008 (nearly seven months after the two-year statute expired and a year and seven months after expiration of the one-year statute).

Plaintiff does not dispute that the statute of limitations on his false arrest/false imprisonment claims began to run on January 13, 2006. However, Plaintiff contends his claims against Moore are timely under two theories. First, he asserts there is "equitable tolling" of the statute of limitations in this case because under the circumstances, it "would be unreasonable to expect Plaintiff to sue [Moore] within the statute of limitations." Plaintiff asserts that he did not find out the conspiracy between Burton and Moore to fabricate evidence and suppress exculpatory evidence until he retained private counsel to represent him in his criminal proceedings, in November 2007. Prior to retaining private counsel, Plaintiff alleges he "was shuffled in an out of courtrooms and appointed numerous public defenders." (Pltf. Opp. at 16.)

Plaintiff also asserts that his claims are timely against Moore because his Third Amended Complaint naming Moore relates back to the filing of his original complaint (on November 17, 2006) under Fed. R. Civ. P. 15(c)(3).

Equitable tolling does not apply. The doctrine of equitable tolling "deals with situations in which timely filing is not possible despite diligent conduct." *Farzana K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 705 (7th Cir. 2007). Equitable tolling is granted "sparingly," and "[e]xtraordinary circumstances far beyond the litigant's control must have prevented the timely filing." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). The fact that Plaintiff was incarcerated is not in and of itself sufficient grounds for equitable tolling. Plaintiff claims that he did not find out about the alleged conspiracy involving Moore until he retained private counsel in November 2007; however, the statute of limitations did not expire for several months thereafter. Plaintiff

11

has not shown that he could not have asserted a false arrest/imprisonment claim before the statute expired. This is not an extraordinary circumstance where equitable tolling applies.

As to Plaintiff's theory that the false arrest/false imprionment claims are timely because they relate back to the filing of the original complaint, Fed. R. Civ. P. 15(c) provides:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity.*

Fed. R. Civ. P. 15(c). (emphasis added.)

Plaintiff asserts that the requirements of Rule 15(c)(1)(B) and (c)(1)(C)(I) are satisfied. But Plaintiff ignores the requirements of Rule 15(c)(1)(C)(ii), requiring Moore's knowledge that the action would have been brought against him "but for a mistake concerning the proper party's identity." Relation back under Rule 15(c)(3) occurs only when there has been a mistake concerning the identity of a party, not when

12

the plaintiff simply lacks knowledge of the proper defendant. *Hall v. Norfolk Southern Railway Co.*, 469 F.3d 590, 597 (7th Cir. 2006). Accordingly, the false arrest/false imprisonment claims do not relate back under Rule 15(c).

Plaintiff's claims of false imprisonment/ false arrest alleged against Moore in Counts II and IV are barred by the statute of limitations. Burton and Moore's motion to dismiss those counts as against Moore is granted.

## CONCLUSION

For the reasons stated above, Burton and Moore's motion to dismiss is denied as to Counts III and X but granted as to Counts II and IV against Moore.

Date: February 12, 2009

JOHN W. DARRAH
United States District Court Judge

13