UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TROY BANISTER, | ) |
| | ) |
| Plaintiff, | ) Case No. 06 CV 5759 |
| | ) |
| v. | ) Judge John W. Darrah |
| | ) |
| CITY OF CHICAGO; CHICAGO | ) |
| POLICE OFFICER CRAIG BURTON; | ) |
| and CHICAGO POLICE | ) |
| SERGEANT MARC MOORE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This Section 1983 action arises out of the arrest of Plaintiff, Troy Banister, on January 13, 2006, and his subsequent criminal trial on May 13, 2008. Plaintiff brings claims against the City of Chicago, Chicago Police Officer Craig Burton ("Burton") and Chicago Police Sergeant Marc Moore ("Moore"). Before the Court is Defendants' Motion for Partial Summary Judgment. (Docket No. 110.) For the reasons stated below, the motion is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488,

1

492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). That is, the non-moving party must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

The following background facts are derived from the parties' filings of record, including their filings required under Local Rule 56.1.[1]

On January 13, 2006, Banister woke up at 10:30 or 11:00 a.m. and left Melissa DeBerry's ("DeBerry") house with DeBerry and her three-year-old son, in DeBerry's van. Banister had a twenty-dollar bill and was planning to go out and purchase some marijuana to smoke with his brother, who was visiting from Atlanta. (Banister Dep., 185-86; 192) Banister intended to buy the marijuana from DeBerry's

---

[1]Both parties have objected to, and moved to strike, portions of each others' statements of material facts filed pursuant to Local Rule 56.1. The motions to strike and objections are denied and overruled as the Court has derived the facts set forth below from its own review of the parties' filings and submitted evidence.

2

friend, Udi, from whom Banister had previously purchased marijuana. (Banister Dep., 186-88.) Banister and DeBerry drove in DeBerry's van to the same location where Banister had previously purchased from Udi, 118th Street and Lafayette Avenue in Chicago. (Banister Dep., 190.)

When DeBerry and Banister arrived, they could not find Udi. (Banister Dep., 198-99.) DeBerry told Banister she was going to drive to the house of another acquaintance,"Westside," to purchase marijuana. (Banister Dep., 207). DeBerry and Banister then proceeded in DeBerry's van to "Westside's" house, located at 121st Street and Lafayette Avenue. (Banister Dep., 208.) Upon arrival at Westside's house, DeBerry exited the van and knocked on Westside's door. (Banister Dep., 210.) However, no one answered; DeBerry then got back into the van, and DeBerry and Banister pulled away. (Banister Dep., 212.) As DeBerry pulled away, she saw "Torey" and "Murder," two guys she knew, walking on Lafayette Avenue. (Banister Dep., 212, 216.) DeBerry pulled over and asked Torey and Murder if they had any marijuana. (Banister Dep., 217.) Torey and Murder told DeBerry that they did not have any, but the "guy in the green car probably got some." (Banister Dep., 219.) A green Malibu car was parked further up on Lafayette Avenue.

On January 13, 2006, Defendant Chicago Police Officer Craig Burton was working in an undercover capacity as a part of a narcotics team. Burton's team was investigating recent shootings in the area of 120th Street and Lafayette Avenue, and Burton was attempting to engage in "buy busts" at that location so that the team could make arrests and interview arrestees to gain intelligence. (DSMF, ¶ 8.) Burton was the

3

person in the green Malibu.

DeBerry proceeded to pull her car alongside the Malibu, blew the horn and lowered her window. Burton also lowered his passenger-side window. DeBerry asked Burton whether he had any marijuana and whether she could buy a twenty. Burton told her yes. (Banister Dep., 227.) DeBerry told him she was going to pull over and let her boyfriend get out and get it. DeBerry then pulled over and parked, and Banister approached the Malibu. Banister handed Burton his twenty dollar bill. (Banister Dep., 234.) However, Burton told Banister to get in the car. Banister proceeded to get in the passenger-side seat of the Malibu. Although the parties disagree over the facts surrounding the transaction,[2] the parties are in agreement that Banister attempted to engage in an illegal drug transaction with Burton.

Banister testified as follows. He got into Burton's car and gave Burton his twenty-dollar bill for marijuana. (DSMF, ¶ 14.) Burton took Banister's money and proceeded to drive his car up the street, parking at around 120st Street and Lafayette Avenue. (Banister Dep., 238.) Banister asked Burton to see the marijuana he was purchasing. At this point, Burton told Banister he did not have any marijuana but solicited Banister to sell him crack. Banister told Burton he did not have any crack, grabbed his twenty dollar bill from Burton and exited Burton's vehicle. (Banister Dep., 243-44.) As Banister was walking away, he heard Burton say, "Drop the gun." Banister threw his hands up. Burton again yelled "Drop the gun" and proceeded to shoot at Banister. (Banister Dep., 244.) Banister denies that he had a gun. Banister was shot in

---

[2] As set out below, Burton's characterization of the attempted illegal drug transaction differs from Banister's.

4

the arm and buttocks by Burton. Upon being shot, Plaintiff fell into the walkway near 12007 South Lafayette.

Burton gave the following testimony. While working undercover on January 13, 2006, he attempted to buy narcotics from two unidentified black males, who directed him to drive to 120th Street and Lafayette Avenue. When he parked at that location, a minivan driven by DeBerry pulled alongside of him. The unidentified male individuals were in the back of the van, and Banister was sitting in the front passenger seat. Banister rolled down his window and asked Burton what he wanted. Burton told him he wanted narcotics. Banister then told Burton to wait and instructed DeBerry to park the van. Banister then got out of the van, entered Burton's vehicle, and instructed Burton to drive to 12007 South Lafayette Avenue. (Burton Dep., 54-55.) Burton did so. Thereafter, Burton attempted to give Banister pre-recorded funds for a suspected narcotics transaction, at which time Banister pulled out a semi-automatic pistol and pointed it at Burton, demanding all of Burton's money. (Burton Dep., 57.) Burton's shooting of Banister followed.

The shooting was investigated by Chicago police detectives. Burton and Defendant Chicago Police Sergeant Moore told detectives that Banister threw a handgun backwards over his head as he was falling to the ground.[3] A weapon was recovered in the yard between 12001 and 12005 South Lafayette Avenue about forty feet from where

---

[3]Moore testified that he was the first responding officer to arrive on the scene after the shooting. (Moore Dep., at 30.) A Chicago Police Department field investigation report of the incident notes that Sgt. Moore stated that he observed Banister, holding a silver metal handgun, and that after Banister was struck by Burton's gunfire, Banister threw the silver metal handgun backwards toward the residence located at 12005 South Lafayette Avenue. (Pltf. Ex. 8, at 21.)

5

Banister fell. Plaintiff claims this evidence was fabricated and planted at that location.

Plaintiff was taken into custody and held on armed robbery and firearms charges. He was subsequently indicted on armed robbery, aggravated assault, and firearm charges. (PSMF, ¶¶ 16, 17.) Plaintiff was arraigned on March 30, 2006. On May 15, 2008, after a jury trial, Plaintiff was found not guilty of the charges. (PSMF, ¶ 18.) Three witnesses – Levearn Alsberry, Johnnie Jones, and Edna Boyd – testified that they did not see a gun in Banister's hand. (Pltf. Statement of Add. Material Facts, ¶ 12.) Plaintiff was incarcerated from January 13, 2006 through May 15, 2008, as a result of the charges brought against him. (PSMF, ¶ 23.)

After his acquittal in state court, Plaintiff filed this action pursuant to 42 U.S.C. § 1983. The Third Amended Complaint alleges the following claims: constitutional claims under 42 U.S.C. § 1983 of excessive force (Count I); "false arrest/false imprisonment" (Count II); a violation of Due Process (Count III); state-law claims of false arrest/false imprisonment (Count IV); malicious prosecution (Count V), *respondeat superior* (Count VI); indemnification (Count VII); intentional infliction of emotional distress (Count VIII); assault and battery (Count IX); and conspiracy to maliciously prosecute (Count X).

Defendants move for partial summary judgment on Counts II, III and IV.[4]

---

[4]Counts II and IV were previously dismissed as against Defendant Moore.

## ANALYSIS

### *Counts II and IV*

Plaintiff's Section 1983 and state law claims of "false arrest/false imprisonment" are based on the same allegations:

> Plaintiff was seized, arrested, placed into a police car, and incarcerated despite BURTON'S and MOORE'S knowledge that there was no probable cause for doing so. Defendants BURTON and MOORE arrested Plaintiff in order to fabricate charges against him.

(Third Am. Complt., ¶¶ 37, 49.)

Defendants contend summary judgment must be granted on these counts because the undisputed evidence shows that Burton had probable cause to arrest Banister for an illegal drug transaction. Specifically, Defendants contend that since there is no dispute, even under Banister's version of events, that Banister attempted to engage in an illegal drug transaction with Burton (*i.e.*, Banister sought to purchase marijuana from Burton), Burton had probable cause to arrest Banister. Defendants rely on *Mustafa v. City of Chicago*, 442 F.2d 544, 547 (7th Cir. 2006), for the proposition that the existence of probable cause for any arrest is an absolute bar to a Section 1983 claim for false arrest "[r]egardless of what transpired immediately prior to and after Officer Burton['s] shooting Plaintiff, and whatever criminal charges were later brought because of these events."[5]

Banister concedes "there was probable cause to arrest [him] for attempted purchase of marijuana" and therefore concedes that he has no Section 1983 claim on the basis that Burton lacked probable cause to arrest him. However, Banister contends trial

---

[5]For this same reason, Defendants contend they are entitled to qualified immunity.

7

is required on Count II because the count "is not limited to false arrest, but focuses on false imprisonment." Specifically, Banister asserts that he was held in custody for sixty-six days on armed robbery and firearm charges prior to his arraignment on March 30, 2006. Relying on *Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007) (*Holmes*), Banister contends trial is required on the "Section 1983 false imprisonment claim" because no probable cause existed for this sixty-six-day detention.

Defendants are entitled to summary judgment on Count II. As the Seventh Circuit has recognized, if an officer has probable cause to believe that an arrested person committed *any* crime, then a Fourth Amendment claim for false arrest is foreclosed, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes*, 511 F.3d at 682. The court stated, "so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest is flawed." *Id.* Here, there is no dispute that Officer Burton had probable cause to arrest Banister for attempting to engage in an illegal drug transaction. Therefore, no cognizable Section 1983 claim exists for "false arrest" under the Fourth Amendment.

Furthermore, Banister has not identified a specific, constitutional right violated by his detention prior to arraignment. Banister relies on *Holmes* to demonstrate that trial is required on his Section 1983 claim, but *Holmes* did not recognize a federal, constitutional claim based on allegations of wrongful detention. Rather, *Holmes* held that probable cause, supporting a criminal charge for one crime, will not foreclose a *state-law* malicious prosecution claim as to one or more additional charges for which the defendant

8

is later prosecuted. *See Holmes*, 511 F.3d at 682 ("In this respect, a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking.") *Holmes* acknowledged that "a plaintiff could not state a section 1983 claim simply by showing that he was wrongly prosecuted but rather must establish that he was deprived of a specific constitutional right, such as the right to a fair trial." *Holmes*, 511 F.3d at 683 (citing *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)). Although Banister now characterizes his claim in Count II as one for "false imprisonment" without probable cause, he has not demonstrated that his "false imprisonment" allegations constitute the deprivation of a specific, constitutional right, as required to support a claim under Section 1983. Rather, Banister's own authority, *Holmes*, teaches that Banister's claim does not support a constitutional claim under Section 1983 but, rather, is appropriately brought as a state-law claim for malicious prosecution.[6] In that Banister's allegations do not support a cognizable, constitutional claim under Section 1983, summary judgment in favor of Defendants is granted on Count II.

While neither party specifically addresses Count IV in their briefs, summary judgment is also warranted on that count. As noted above, Count IV is a state-law claim that mirrors Count II. In that "the framers of [the Illinois Constitution] intended the

---

[6]As noted, Count V of the Third Amended Complaint alleges a state-law claim of malicious prosecution; Defendants have not moved for summary judgment on Count V.

9

search and seizure clause of the Illinois Constitution to remain cognate with the fourth amendment [of the United States Constitution]," *People v. Bailey*, 874 N.E.2d 940, 958 (Ill. App. 2007), Count IV fails for the same reasons as Count II.

### Count III

Count III alleges a constitutional due process claim under Section 1983. Banister alleges Burton and Moore deprived him of his constitutional right to a fair trial. Banister alleges:

> BURTON and MOORE deliberately provided false evidence about the alleged crimes, thereby misleading and misdirecting the state criminal prosecution of Plaintiff. BURTON and MOORE provided false allegations that were the bases of the criminal complaint, withheld exculpatory evidence throughout the proceedings, and fabricated evidence that was the bases of the criminal prosecution. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

(Third Amended Complaint, ¶ 44.)

Defendants contend they are entitled to summary judgment on this claim, first, because "Plaintiff cannot establish that any Defendants fabricated any evidence" and, second, because "Plaintiff cannot establish that the Defendants withheld any exculpatory evidence" under *Brady v. Maryland*, 373 U.S. 83 (1963).

However, a genuine issue of material fact exists as to whether Defendants fabricated evidence. Specifically, a jury must determine whose version of the facts is credible. Burton and Moore contend that Banister threw a gun in the vicinity of 12001 and 12005 South Lafayette Avenue as he was falling to the ground after he was shot by Burton; whereas, Banister contends he was unarmed at all times, and the gun subsequently found at the scene was planted there by Defendants to justify the shooting

10

of Banister. Banister's version of the facts is consistent with the deposition testimony of three witnesses, who testified that they did not see Banister possess a weapon.[7]

If the jury credits Banister's position, Banister could succeed on a claim that his due process rights were violated, regardless of whether Banister can show that Defendants withheld exculpatory evidence under *Brady*. Indeed, as the First Circuit stated in *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004), "if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process."

There is sufficient evidence to withstand summary judgment on Banister's due process claim in Count III.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Partial Summary Judgment is granted as to Counts II and IV but denied as to Count III.

Date: September 10, 2009

JOHN W. DARRAH
United States District Court Judge

---

[7]Further, as Judge Shadur observed in *Todd v. City of Chicago*, Case No. 96 CV 5245, 1999 WL 356293, at n.3 (N.D. Ill. May 24, 1999), the "notorious illegal practice of planting an unregistered loaded 'drop gun' on the victim to make it appear that the officer's use of deadly force in response to a threat was .. justified" is "scarcely [an] unheard-of situation."

11