UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TROY BANISTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06-cv-5759 |
| v. ) | |
| ) | Judge John W. Darrah |
| CITY OF CHICAGO, CHICAGO ) | |
| POLICE OFFICER CRAIG BURTON, ) | |
| and CHICAGO POLICE ) | |
| SERGEANT MARC MOORE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Troy Banister, brought this action against Defendants, Chicago Police Officer Craig Burton, Chicago Police Sergeant Marc Moore, and the City of Chicago (collectively, "Defendants"), alleging deprivation of his civil rights under 42 U.S.C. § 1983. On January 13, 2006, Officer Burton and then-Sergeant Moore were working as part of an undercover narcotics team on Chicago's South Side. Banister approached Officer Burton, asked to buy some drugs, and got into his vehicle. Shortly thereafter, both men got out of the car, and Officer Burton fired his handgun at Banister, hitting him several times. According to Officer Burton, Banister was pointing a gun at him at the time and threw the gun after he was shot. Banister denied having a gun and argued that Defendant Moore planted the gun that was later found approximately forty feet from where Banister was shot.

The case went to trial, and a jury returned a verdict for Defendants on October 14, 2009. On October 30, 2009, Banister filed a Motion for a New Trial,

asserting that defense counsel made improper statements in closing argument. The statements were brief, and a curative instruction was provided by the Court. Those statements did not render Banister's trial unfair, and Banister's motion is therefore denied.

## LEGAL STANDARD

A new trial is warranted if the jury's verdict was "against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003). "[I]mproper comments during closing argument rarely rise to the level of reversible error." *Probus v. K-Mart, Inc.*, 794 F.2d 1207, 1210 (7th Cir. 1986) (*Probus*) (quoting *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1311 (7th Cir. 1985 (*Ramsey*)). This is especially true when improper statements made in closing argument were relatively brief. *Id.* at 1210. A prompt curative instruction from the court can mitigate any harm from an improper remark in closing argument. *Ramsey*, 772 F.2d at 1311. A jury is presumed to follow the court's instructions "absent an overwhelming probability that the jury will be unable to disregard inadmissible evidence and a strong likelihood of a devastating effect from the evidence." *Turner v. Miller*, 301 F.3d 599, 604 (7th Cir. 2002) (citation omitted).

2

## ANALYSIS

As an initial matter, the parties dispute whether Banister's Motion for a New Trial was timely. Under Federal Rule of Civil Procedure 59(b), Banister's Motion for a New Trial had to be filed "no later than 10 days after the entry of judgment."[1]

The jury rendered a verdict in favor of Defendants on October 14, 2009. A "Judgment in a Civil Case" was filed by the Clerk of Court that same day, but it was not entered (i.e., it did not appear on the docket) until October 16, 2009. Banister filed his Rule 59 motion on October 30, 2009 – within ten days of October 16 but more than ten days after October 14.

Rule 59(b) provides that the deadline for filing a motion for a new trial is triggered by the "*entry* of the judgment." Fed. R. Civ. P. 59(b) (emphasis added). In a similar case addressing whether a notice of appeal was timely filed, the Seventh Circuit clearly stated that it is the entry of the judgment on the civil docket that triggers the time for filing. *Darne v. State of Wis., Dep't of Revenue*, 137 F.3d 484, 486 n.1 (7th Cir. 1998) (holding that the time for appeal was triggered by the date that final judgment was entered on the docket, not the date it was signed and filed). Thus, October 16 was the triggering date in this case, and under the operative version of the Federal Rules of Civil Procedure, Banister filed his Motion for a New Trial within ten days of that entry. The motion was timely.

Turning now to the merits of that motion, Banister's request for relief is based primarily on a single statement made by counsel for the defense in closing argument:

---

[1] Effective December 1, 2009, a party moving for a new trial now has 28 days in which to file a motion for a new trial. *See* Fed. R. Civ. P. 59(b)

**"And Dr. Fishman testified that there was nothing with the plaintiff's injuries that would have prevented him from throwing that gun 40 feet."** (Trial Tr. at 884 (emphasis added.) Dr. Fishman, a trauma surgeon who treated Banister's injuries, actually testified that Banister's injuries would not have prevented him from throwing "an object." (*Id.*) The specific issue is thus whether defense counsel's use of the words "that gun 40 feet" prejudiced Banister such that a new trial is warranted. Banister argues that this remark "went to the core of the factual dispute in this case" and constitutes an intentional misstatement of the evidence on a crucial point. (Mot. at 1, 6.) Defendants contend it was an "innocent mistake" that was cured by the Court's instructions and by defense counsel's own corrective statement. (Resp. Br. at 3-4.)

In closing argument, defense counsel argued numerous reasons for the jury to discredit Banister's contentions. In addressing Banister's planted-gun theory, defense counsel argued that Banister was making too much of the fact that the gun was found forty feet away and that forty feet was not that far to throw a gun. (Trial Tr. at 884.) He then made the statement at issue regarding Dr. Fishman's testimony.

Banister's counsel immediately objected, and the Court gave a curative instruction to the jury: "Ladies and gentlemen, you heard the testimony in this case. To the extent that what the lawyers say regarding the testimony does not comport with your recollection, you should disregard the statements." (Trial Tr. 884.) Defense counsel then corrected his statement and returned to his general argument about the forty-foot throw, stating, "He testified that the injuries to him, to the plaintiff, would not prevent him from

4

throwing an object. That's exactly what he said. So if they make a big deal about this 40 feet again, remember Dr. Fishman's testimony." (Trial Tr. at 884-85.)

Banister cites only two cases from the past twenty-five years in which an improper statement made in closing argument justified a new trial, and both of those cases addressed statements that were clearly more prejudicial than the remark at issue in this case. In *Joseph v. Brierton*, 739 F.2d 1244, 1247-48 (7th Cir. 1984), defense counsel secured an *in limine* ruling barring plaintiff's counsel from informing the jury that the State of Illinois would pay any judgment of compensatory damages against the individual defendants. He then argued in closing that "a large judgment would ruin his clients [the individual defendants]" and pursued the argument at some length without drawing any objection from plaintiff's counsel, who was barred by the court's *in limine* ruling from mentioning indemnity. Although the district court instructed the jurors not to concern themselves with the defendant's ability to pay in the event they got to the issue of damages, the Seventh Circuit found that instruction to be inadequate and ordered a new trial based on those statements, which were "not only false but also highly prejudicial in both content and wording." *Id.* at 1248. In the second case Banister cites, *Spicer v. Rossetti*, 150 F.3d 642, 643-44 (7th Cir. 1998), defense counsel expressly argued that plaintiff's counsel did not believe his client. The Seventh Circuit held that the statement was "grossly inappropriate" and that a new trial was necessary to correct counsel's "egregious attack into the heart of the plaintiff's case." *Id.* at 644.

To the extent counsel's statement in this case was improper, it was cured by the Court and immediately corrected by counsel. It was not so "grossly inappropriate" to

5

warrant a new trial. Nor was it so highly prejudicial as to render Banister's trial unfair. The comment was brief – a few lines out of what Banister's counsel calls a "90 minute eloquent closing argument." (Reply Br. at 3.)

Any risk that the jury would give credit to counsel's misstatement of the evidence was ameliorated by multiple curative instructions from the Court. The instruction provided in response to Banister's counsel's objection re-emphasized what the jury had previously been told before closing arguments began:

> I caution you that what the lawyers say is not evidence, and to the extent that any statement made by any of the lawyers in this case disagrees with your recollection of what the evidence was on that subject, you should disregard the lawyer's statement. Do you understand that? (Jurors nodding.)

(Trial Tr. at 824).

The instruction was provided again before deliberations:

> [T]he lawyer's opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

(*Id.* at 930.) To the extent defense counsel misstated the evidence, Banister's counsel had an opportunity to address and further correct those statements during his rebuttal argument.

Banister argues that it is not enough to consider this closing-argument statement in isolation, that it must be evaluated in light of what Banister considers to be a flagrant disregard for the Court's evidentiary rulings and a contradiction of express representations made by defense counsel in response to Banister's motion *in limine*. (Reply Br. at 2-6.) But the ultimate concern is prejudice, and the jury was not privy to

any pretrial arguments or rulings on the motion *in limine* regarding throwing the gun. Defense counsel did not, in final argument, violate any clear prohibition from the Court.

Before trial, Banister moved to prevent Dr. Fishman from offering opinion testimony at trial. Among other things, Banister asserted that Defendants were improperly seeking to offer Dr. Fishman's opinions that Banister "could have thrown the handgun [40 feet] with his right hand." (Mot. at 2 (citing Mot. to Bar Expert Testimony at 3).[2])

Defendants responded that they were "not seeking to, nor has Dr. Fishman said that he can testify as to the exact distance Plaintiff could have thrown the weapon." (Docket No. 159, at 5.) After hearing arguments from Banister's counsel during a sidebar at trial (Trial Tr. 221), the Court decided to allow Dr. Fishman to testify as to his opinion that Banister's injuries would not have prevented him from throwing an object:

> THE COURT: So you can ask him, is there anything about his condition, based on the charts, that would prevent him from throwing an object, that would prevent him from crawling?
>
> MR. STEIN: How much it weighed or the nature of the object and not how far?
>
> THE COURT: No, just that he could throw an object.

(*Id.* at 226.) Thus, counsel was not permitted to ask Dr. Fishman how far he believed Banister could have thrown the gun.

---

[2] Banister's motion to bar Dr. Fishman's testimony was in response to Defendants' Rule 26(a)(2) disclosures, which stated that Dr. Fishman would testify as to "his opinion that Plaintiff could have thrown the handgun with his right hand." The "40 feet" was added by Banister.

7

And counsel did not ask that Dr. Fishman for that opinion. In accordance with the Court's ruling, he simply asked Dr. Fishman whether anything would have prevented Banister "from being able to throw an object with his right hand." (*Id.* at 227.) Over the objection of Banister's counsel, the Court allowed Dr. Fishman to provide the basis for that opinion:

> Although Mr. Banister suffered gunshot wounds to his right upper arm, shoulder area, diagnostic tests done, x-ray tests done and physical examination revealed no structural injury of significance. No bones were broken. No nerve injury was found. So in my opinion the mere presence of the gunshot wounds and the damage they may have done to the muscles and to the skin and the fat underneath the skin would not have prevented him from throwing an object.

(*Id.* at 227-28.)

Banister argues that by later arguing that Dr. Fishman offered an opinion about the specific distance the gun could be thrown, defense counsel violated the Court's *in limine* rulings. Banister cites only two cases to support his assertion that violation of an *in limine* ruling justifies a new trial. Neither is from this circuit, and neither provides any reason to order a new trial in this case. The first is an Eighth Circuit opinion stating that a new trial is warranted when the order is "specific in its prohibition and the violation . . . [is] clear." *See Pullman v. Land O'Lakes, Inc.*, 262 F.3d 759, 762 (8th Cir. 2001) (*Pullman*). Notably, *Pullman* did not order a new trial. *Id.* Although the district court had acknowledged that an *in limine* order had been violated when the plaintiff testified about insurance coverage, the court nonetheless concluded that the testimony was not prejudicial. *Id.* The Eighth Circuit agreed. *Id.* at 762-63. In the other case cited by Banister, *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 832 (N.D. Okla. 2007)

(*Moody*), a district court ruled *in limine* that the plaintiff would have to request a hearing if he sought to introduce any evidence of incidents similar to the one at issue in that case. Notwithstanding that ruling, and without requesting a hearing, plaintiff's counsel alluded to such other incidents in his opening statement, mentioned other incidents when examining a witness, and referenced statistics of other incidents in his closing argument without having offered any supporting substantive evidence. *Id.* at 834. Even though the *in limine* ruling was clear and the violation of that ruling was flagrant, the district court's decision to grant a new trial was not made on that basis alone. *See id.* at 847 (finding that "[t]he combination of these violations, along with plaintiff's counsel's improper conduct, leaves this Court with a firm conviction that [defendant] did not receive a fair trial.")

Here, unlike in *Pullman* and *Moody*, defense counsel never sought to present inadmissible evidence to the jury. At worst, defense counsel misstated the evidence when he credited Dr. Fishman as having testified as to a certain distance that Banister could have thrown the gun. The misstatement was brief, and it was corrected by counsel and by the Court. "[C]ivil litigants are entitled to a fair trial, not a perfect one." *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993). Defense counsel's mistake did not deprive Banister of a fair trial.

Finally, Banister summarily argues that defense counsel made other improper statements during closing argument but makes no effort to articulate how Banister was prejudiced by these statements. Defendants nonetheless devote several pages of their response to arguing that those statements were proper. Banister makes no effort to respond, limiting his reply to the statement about Dr. Fishman's testimony. The Court

9

has reviewed each of those statements and finds no risk of prejudice that would warrant a new trial.

## CONCLUSION

"[I]mproper comments during closing argument rarely rise to the level of reversible error." *Probus*, 794 F.2d at 1210. Banister has not shown this to be such an extraordinary occasion and has not shown that defense counsel's comments deprived Banister of a fair trial. Accordingly, Banister's Motion for a New Trial is denied.

Date: 1-26-10

JOHN W. DARRAH
United States District Court Judge